**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Dennis M Monroe,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-02571-PHX-JAT<br><br>**ORDER** |

Pending before the Court is Dennis M. Monroe's ("Plaintiff") appeal from the Social Security Commissioner's ("Commissioner") denial of his application for a period of disability, disability insurance benefits, and Supplemental Security Income ("SSI") under Title II of the Social Security Act, 42 U.S.C. §§ 401–434. (Doc. 1). The Court now rules on the appeal.

**I.   BACKGROUND**

Plaintiff filed an application for disability insurance benefits on January 29, 2015. (Doc. 12-6 at 2). Plaintiff's application was denied at the initial stage, upon reconsideration, and by the ALJ after a hearing. (*Id.*).

    **a.   The Disability Determination**

To qualify for social security benefits, a claimant must show he "is under a disability." 42 U.S.C. § 423(a)(1)(E). If he shows he suffers from a medically determinable physical or mental impairment that prohibits him from engaging in any "substantial gainful activity," the claimant is disabled. *Id.* § 423(d)(1)–(2). The Social Security Administration

("SSA") has created a five-step process for an Administrative Law Judge ("ALJ") to determine whether the claimant is disabled. 20 C.F.R. § 404.1520(a)(1). If an ALJ determines that the individual is not disabled at any step, the inquiry ends. *Id.* § 404.1520(a)(4). "The burden of proof is on the claimant at steps one through four," and the burden shifts to the Commissioner at step five. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

At step one, the ALJ must determine whether the claimant is "doing substantial gainful activity." § 404.1520(a)(4)(i). If he is not, the ALJ must proceed to step two and consider whether the claimant has a physical or mental impairment or a combination of impairments that are "severe." *Id.* § 404.1520(a)(4)(ii). If there is severe impairment, the ALJ proceeds to step three to determine whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id.* § 404.1520(a)(4)(iii). If so, the claimant is disabled. *Id.* If not, the ALJ must assess the claimant's "residual functional capacity" ("RFC") before proceeding to step four. *Id.* § 404.1520(a)(4). The RFC represents the most a claimant "can still do despite [his] limitations." *Id.* § 404.1545(a)(1). At step four, the ALJ determines whether the claimant can still do "past relevant work" in light of the claimant's RFC. *Id.* § 404.1520(a)(4)(iv). If not, the ALJ proceeds to the final step to determine whether the claimant "can make an adjustment to other work" considering the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v).

**b.     The ALJ's Decision**

The ALJ denied Plaintiff social security benefits because she determined he could do the full range of medium exertional work. (Doc. 12-3 at 31–32). After finding that Plaintiff was not engaged in substantial gainful activity at step one, at step two, the ALJ determined that Plaintiff's "medically determinable mental impairments of major depressive disorder and mild cognitive disorder, considered singly and in combination, do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and are therefore nonsevere." (*Id.* at 24–26). However, the ALJ found that

the Plaintiff's hemochromatosis and obstructive sleep apnea were severe impairments, so she proceeded to step three. (*Id.* at 24).

At step three, the ALJ concluded that Plaintiff's severe impairments "do[] not meet or medically equal the criteria of any impairment listed in 20 CFR Part 404, Subpart P, Appendix 1." (*Id.* at 27). Therefore, the ALJ underwent the RFC analysis. (*Id.* at 27–29). In doing so, she discounted Plaintiff's subjective symptom testimony and the opinions of his treating providers which indicated moderate, moderately severe, and severe limitations in various activities performed "on a sustained basis in a routine work setting," (Doc. 12-11 at 82–83 (Ex. 8F) (NP Nemati); Doc. 12-13 at 47–48 (Ex. 15F) (Dr. Saunders)). (Doc. 12-3 at 27–29). The ALJ instead credited the Disability Determination Service's reviewing medical consultant and psychological consultant. (*Id.* at 29). The medical consultant determined Plaintiff could do the full range of work at the medium exertional level, and the psychological consultant determined Plaintiff's mental impairments were nonsevere. (*Id.*). The ALJ's ultimate conclusion was that Plaintiff's impairments restrict him "to the full range of the medium exertional level." (*Id.* at 31). At step four, the ALJ determined Plaintiff's past work was at the medium exertional level, and thus, the ALJ concluded Plaintiff was not entitled to disability benefits. (*Id.* at 31–32).

## II.  LEGAL STANDARD

An ALJ's decision to deny a claim for disability benefits may be reversed "only when the ALJ's findings are based on legal error or not supported by substantial evidence in the record." *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003). "'Substantial evidence' means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (citing *Young v. Sullivan*, 911 F.2d 180, 183 (9th Cir. 1990)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted). The ALJ, as the trier of

fact, "must resolve conflicts in the evidence, and if the evidence can support either outcome, the [C]ourt may not substitute its judgment for that of the ALJ." *Matney v. Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992). The ALJ is also "entitled to draw inferences logically flowing from the evidence." *Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008). And, it is the ALJ's responsibility to resolve conflicts in medical testimony, determine credibility, and resolve ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Accordingly, the ALJ has the "duty to fully and fairly develop the record and to assure that the claimant's interests are considered." *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) (quoting *Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996)).

The Court "may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted). Moreover, "[a]lthough the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for [the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015). In other words, if the ALJ's "path" cannot "reasonably be discerned," the ALJ's decision must be reversed. *Id.* (quoting *Alaska Dep't of Envtl. Conservation v. E.P.A.*, 540 U.S. 461, 497 (2004)). As such, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See Orn*, 495 F.3d at 630.

### III. ANALYSIS

Plaintiff contends that the ALJ erred in the weight she gave the opinions of his treating providers and the opinions of the agency consultants, in discounting Plaintiff's subjective symptom testimony, and in concluding that Plaintiff's mental conditions do not constitute severe impairments. (Doc. 15).

#### a. Opinion Evidence

Plaintiff argues that the ALJ did not properly weigh the opinions of Plaintiff's treating providers. (Doc. 15 at 3–8). Plaintiff also contends that the ALJ erred in rejecting

Plaintiff's request to subpoena the agency consultants who evaluated his conditions. (*Id.* at 9–10).

### 1. Weight

Plaintiff first argues that the ALJ erred in giving little weight to the opinions of Dr. Richard W. Saunders, Plaintiff's treating psychologist, and Plaintiff's treating nurse practitioner Sakinah A. Nemati. (Doc. 15 at 3–4). Dr. Saunders and NP Nemati filled out a check-list form that indicated moderate, moderately severe, and severe limitations in various activities performed "on a sustained basis in a routine work setting." (Doc. 12-11 at 82–83 (Ex. 8F) (NP Nemati); Doc. 12-13 at 47–48 (Ex. 15F) (Dr. Saunders)). The vocational expert testified that these limitations would prevent Plaintiff from performing past work or other work. (Doc. 12-3 at 63–64 (Trans. at 23–24)).

The ALJ gave the opinions of Dr. Saunders and NP Nemati little weight because she determined that "the medical evidence of record indicates only mild limitations . . . [and] mental status examinations were essentially normal and the claimant's provider noted that the claimant benefited from his psychiatric medications, with no side effects." (Doc. 12-3 at 29). The Commissioner asserts that this rationale is sufficient. (Doc. 17 at 8–12).

Preliminarily, the Court notes that it must review the ALJ's decision to discount the opinions of Dr. Saunders and NP Nemati differently. 20 C.F.R. § 416.913 (2017)[1] distinguishes between the opinions of "acceptable medical sources" and "other sources." *See Revels v. Berryhill*, 874 F.3d 648, 655, 665 (9th Cir. 2017). NP Nemati does not qualify as an "acceptable medical source." *See* § 416.913(d)(1); *Revels*, 874 F.3d at 655, 665. Dr. Saunders is a licensed psychologist who does, however. § 416.913(a)(2).

The opinion of a treating provider who qualifies as an acceptable medical source, such as a treating psychologist like Dr. Saunders, is given "'controlling weight' so long as it 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques

---

[1] Section 416.913 was amended on January 18, 2017, and the amended version became effective on March 27, 2017. *See* 82 Fed. Reg. 5844, 5875–76 (Jan. 18, 2017). Plaintiff's claim was filed on January 29, 2015, (Doc. 12-6 at 2), and thus the version effective from September 3, 2013 to March 26, 2017 applies here.

- 5 -

and is not inconsistent with the other substantial evidence in [the claimant's] case record.'" *Trevizo v. Berryhill*, 871 F.3d 664, 675 (9th Cir. 2017) (alteration in original) (quoting 20 C.F.R. § 404.1527(c)(2)); *see* § 404.1527(c)(2); *Davis v. Astrue*, 444 F. App'x 151, 152 (9th Cir. 2011). A treating psychologist's medical opinion is generally given more weight because these individuals "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations. . . ." § 404.1527(c)(2); *see also id.* § 416.927(c)(2). However, if evidence in the record contradicts the treating psychologist's opinion, the ALJ may reject it for specific, legitimate reasons that are based on substantial evidence.[2] *Bray*, 554 F.3d at 1228; *Embrey v. Bowen*, 849 F.2d 418, 421 (9th Cir. 1988) (citation omitted). In doing so, the ALJ must make findings that set out a "detailed and thorough summary of the facts and *conflicting* clinical evidence." *See Trevizo*, 871 F.3d at 676 (emphasis added) (citation omitted) (reversing ALJ for failing to specifically "point[] to" inconsistencies between the clinical record and the treating physician's opinions).

An ALJ's conclusory statement that there is contradictory evidence in the record is not a specific and legitimate reason to discount the opinion of a treating physician[3] or psychologist. *See Embrey*, 849 F.2d at 421–22. For example, in *Embrey*, the ALJ found that the treating physicians' opinions were "unsupported by sufficient objective findings and contrary to the preponderant conclusions mandated by those objective findings." *Id.* at 421. The ALJ in *Embrey* also listed some of the findings he found relevant to his

---

[2] If the treating psychologist's opinion is not contradicted, the ALJ may only reject it if there are "clear and convincing reasons for doing so." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). It is unclear here, based on the ALJ's analysis, what medical evidence in the record contradicted what opinion of Dr. Saunders. But, it is clear that the ALJ determined some of the medical evidence in the record contradicted at least one of Dr. Saunders' opinions. Because the Court concludes that the ALJ's decision to discount Dr. Saunders' opinion was in error under the lower specific-and-legitimate-reasons standard, it is not necessary to speculate whether the evidence in the record was truly contradictory such that the clear-and-convincing standard applies on review.

[3] Physicians, like psychologists, are also listed as an acceptable medical source under § 416.913(a). *See* § 416.913(a)(1).

determination that he should not credit the treating physician's opinion with controlling weight. *See id.* The Ninth Circuit reversed. *Id.* at 422. The court reasoned that "[t]he subjective judgments of treating physicians are important, and properly play a part in their medical evaluations"; thus, "the ultimate conclusion of those physicians must be given substantial weight." *Id.*; *see* §§ 404.1527(c)(2), 416.927(c)(2). If the ALJ discounts a treating physician's opinion, the ALJ must make an "effort to relate . . . the[] objective factors to any of the specific medical opinions and findings [the ALJ] rejects." *Embrey*, 849 F.2d at 422. The ALJ must also explain why her opinions and interpretation of the objective medical evidence is correct, and thus, why the treating physician's opinion is incorrect. *Id.* at 421–22.

Additionally, if an ALJ does not give the opinion of a treating psychologist or physician controlling weight, the ALJ must determine the credibility of the medical opinion under the factors outlined in § 404.1527(c), including "the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion." *Trevizo*, 871 F.3d at 676 (citing § 404.1527(c)). Failure to do so constitutes reversible error. *Id.* (concluding that ALJ's rejection of treating physician's opinion in light of the objective evidence in the record was reversible error because ALJ failed to consider factors outlined under § 404.1527(c)); *see Kelly v. Berryhill*, 732 F. App'x 558, 563 (9th Cir. 2018); *Elgrably v. Comm'r of Soc. Sec. Admin.*, No. CV-17-04760-PHX-JAT, 2018 WL 5264074, at *8 (D. Ariz. Oct. 23, 2018) (finding reversible error because, "[a]lthough the ALJ stated that the opinions of [claimant's treating physicians] are 'inconsistent with the medical evidence and unsupported by clinical findings on examination,' . . . , the ALJ did not consider factors such as the length of the treating relationship, the frequency of examination, the nature and extent of the treatment relationship, or the supportability of the opinion").

The ALJ did not provide a specific, legitimate reason that is supported by substantial evidence for discounting Dr. Saunders' opinion. Although the ALJ cited to what she deemed contradictory objective medical evidence, the ALJ failed to connect any of the

objective medical evidence from the record to any of Dr. Saunders' opinions, as *Embrey* instructs. *See Elgrably*, 2018 WL 5264074, at *7 ("[I]t is unclear from the ALJ's opinion how [the treating physicians'] opinions even conflict with the medical evidence in this case."). The ALJ did not adequately explain why her interpretation of the objective medical evidence was correct, and thus, why Dr. Saunders was incorrect. Indeed, the ALJ's citation to certain objective evidence did not necessarily show any inconsistency with Dr. Saunders' opinions. For example, as noted above, the ALJ found that Dr. Saunders' opinions were contradicted by Plaintiff's "mental status examinations," which she broadly categorized as "essentially normal," in part, based on an evaluation from June 2016. (Doc. 12-3 at 29). But, earlier in the decision, the ALJ stated that the June 2016 evaluation indicated Plaintiff's "results ranged from the high end of average to the severely impaired range." (*Id.* at 25). As such, it is unclear how the objective medical evidence contradicts Dr. Saunders' opinions.

In short, the ALJ's vague, conclusory analysis of how the objective medical evidence contradicts Dr. Saunders' opinions does not show "how the evidence conflicts with [his] opinion[s]," and thus, the ALJ's determination that objective medical evidence in the record contradicts Dr. Saunders' opinions is not a specific and legitimate reason, supported by substantial evidence, for discounting Dr. Saunders' opinion. *See Elgrably*, 2018 WL 5264074, at *8. Additionally, the ALJ's decision must be reversed under *Trevizo* because she did not examine the factors listed under § 404.1527(c).[4] Therefore, the ALJ erred.

The ALJ also erred in her analysis of the weight she accorded NP Nemati for similar reasons. As noted above, NP Nemati does not qualify as an "acceptable medical source"

---

[4] *Trevizo* was issued on July 10, 2017, ten days after the ALJ issued her decision on June 30, 2017. *See Trevizo v. Berryhill*, 862 F.3d 987 (9th Cir. 2017), *amended*, 871 F.3d 664. Although the ALJ cannot be faulted for not forecasting that her decision would be violative of *Trevizo*, her failure to examine the § 404.1527(c) factors still constitutes reversible error. Indeed, the *Trevizo* court itself remanded after finding this exact error. 871 F.3d at 684. Moreover, § 404.1527 was promulgated and in effect before the ALJ made her decision. Therefore, the fact that *Trevizo* was not issued until after the ALJ's decision is irrelevant for purposes of deciding this appeal.

under § 416.913(d)(1).[5] *See Revels*, 874 F.3d at 655, 665. Therefore, NP Nemati's opinion was not entitled to the same weight as Dr. Saunders' opinion because it was an "other source." *See id.* The ALJ was only required to give germane reasons for rejecting NP Nemati's opinion. *Id.* Nevertheless, an ALJ must provide specific reasons for discounting the opinion of an other source and may not simply offer a conclusory statement. *See Popa v. Berryhill*, 872 F.3d 901, 907 (9th Cir. 2017); *Seaman v. Berryhill*, No. 4:16-CV-00027-SLG, 2017 WL 3879084, at *7 (D. Alaska Sept. 5, 2017). And, an ALJ must evaluate the opinion of an other source who treats the patient under the same factors used to evaluate the opinion of a treating physician or psychologist (or any other acceptable medical source) as outlined by § 404.1527(c). *See Revels*, 874 F.3d at 655, 665.

The ALJ concluded that NP Nemati's opinion was inconsistent with the objective medical evidence in the record, which generally is a germane reason for discounting the opinion of an other source like NP Nemati. *See, e.g.*, *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). However, the ALJ here offered only a conclusory statement that NP Nemati's opinion was inconsistent with the objective medical evidence in the record. The ALJ did not explain how certain evidence contradicted any particular opinion. In fact, as noted above, based on the ALJ's own recounting of the objective medical evidence as indicating that Plaintiff's June 2016 "neuropsychological evaluation . . . results ranged from the high end of average to the severely impaired range," (Doc. 12-3 at 25), it is unclear how the objective medical evidence contradicted NP Nemati's opinion. Moreover, the Ninth Circuit Court of Appeals has made clear that an ALJ must apply the § 404.1527(c) factors in evaluating opinions by other sources. *See Revels*, 874 F.3d at 655, 665. Because the ALJ did not analyze NP Nemati's opinion under the § 404.1527(c) factors, the ALJ erred. Accordingly, the ALJ committed reversible error in failing to properly discount NP Nemati's opinion.

---

[5] The Court reiterates, § 416.913 was amended on January 18, 2017, and the amended version became effective on March 27, 2017. *See* 82 Fed. Reg. at 5875–76. Plaintiff's claim was filed on January 29, 2015, (Doc. 12-6 at 2), and thus the version effective from September 3, 2013 to March 26, 2017 applies here.

- 9 -

### 2. ALJ's Denial of Cross-examination of Agency Consultants

Plaintiff also asserts that the ALJ erred in refusing to issue a subpoena requiring the agency consultants to appear at the hearing so that Plaintiff could cross-examine them. (Doc. 15 at 9). A claimant "is not entitled to unlimited cross-examination," but cross-examination "may be required for a full and true disclosure of the facts." *Solis v. Schweiker*, 719 F.2d 301, 302 (9th Cir. 1983) (quoting 5 U.S.C. § 556(d)). The ALJ has discretion to determine whether cross-examination is required. *Id.* Typically, when a claimant has "availed himself of the right to request cross-examination, and [when] the report [is] so crucial to the ALJ's decision, . . . denial of [the claimant's] request [is] an abuse of discretion," especially where "the physician is a crucial witness whose findings substantially contradict the other medical testimony." *Id.* at 301–02; *cf. Bello v. Astrue*, 241 F. App'x 426, 427–28 (9th Cir. 2007) (holding that ALJ abused her discretion by denying a motion to subpoena consultative examiner where consultative examiner's opinion was the primary basis for ALJ's denial of benefits and it "substantially contradicted" the opinion of treating physicians).

Here, as the ALJ noted, the medical agency consultant determined that Plaintiff is "limited to the full range of the medium exertional level." (Doc. 12-3 at 29 (citing (Doc. 12-4 at 3–12 (Ex. 2A); Doc. 12-4 at 14–24 (Ex. 4A)))). The psychological agency consultant concluded that Plaintiff's mental impairments were nonsevere. (*Id.* (citing (Doc. 12-4 at 3–12 (Ex. 2A); Doc. 12-4 at 14–24 (Ex. 4A)))). These findings conflict with the opinions of Plaintiff's treating providers, which found Plaintiff has moderate, moderately severe, and severe limitations in various activities performed "on a sustained basis in a routine work setting." (Doc. 12-11 at 82–83 (Ex. 8F) (NP Nemati); Doc. 12-13 at 47–48 (Ex. 15F) (Dr. Saunders)). Moreover, the ALJ gave these findings great weight, indicating they were important in the ALJ's decisionmaking process. *See Powers v. Comm'r of Soc. Sec. Admin.*, No. CV-16-03427-PHX-GMS, 2018 WL 1182554, at *4 (D. Ariz. Mar. 7, 2018). Accordingly, the ALJ erred in denying Plaintiff's request to subpoena the agency consultants. On remand, the ALJ must allow cross-examination of the agency consultants.

### b.     Weight of Plaintiff's Testimony

Plaintiff argues that the ALJ erred in discounting Plaintiff's subjective symptom testimony. (Doc. 15 at 10–15). The ALJ discounted Plaintiff's subjective symptom testimony relating to fatigue because she found Plaintiff engages in household and other daily activities, a medication was helping control Plaintiff's fatigue, and Plaintiff sold his business due to dropping revenues and health, not just for health reasons. (Doc. 12-3 at 28–29).

In determining whether a claimant's testimony should be discounted, an ALJ must perform a two-step process. The ALJ must first determine whether the claimant has presented "objective medical evidence of an underlying impairment which might reasonably produce the pain or symptoms alleged." *Brown-Hunter*, 806 F.3d at 492–93. If so, the ALJ must provide "specific, clear and convincing reasons for" discounting the testimony regarding the severity of the symptoms, unless the claimant is malingering. *Id.* (citation omitted) The ALJ's reasoning must be based on substantial evidence. *See id.* at 495.

Here, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to produce the above alleged symptoms." (Doc. 12-3 at 28). However, the ALJ discounted Plaintiff's statements relating to "the intensity, persistence and limiting effects of these symptoms." (*Id.*). The ALJ made no finding as to malingering. As such, the ALJ must have had specific, clear and convincing reasons for discounting Plaintiff's testimony.

An ALJ's credibility determination "must rely either on reasons unrelated to the subjective testimony (e.g., reputation for dishonesty), on conflicts between his testimony and his own conduct, or on internal contradictions in that testimony." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 792 (9th Cir. 1997). In analyzing whether to discount a claimant's testimony, "[t]he ALJ must identify the testimony that was not credible, and specify 'what evidence undermines the claimant's complaints.'" *Treichler*, 775 F.3d at 1103 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). The ALJ's findings "must contain

specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence, and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." SSR 16-3p, 82 Fed. Reg. 49462, 49467 (Oct. 25, 2017). As noted above, if the ALJ's "path" cannot "reasonably be discerned," the ALJ's decision must be reversed. *Treichler*, 775 F.3d at 1103 (quoting *Alaska Dep't of Envtl. Conservation*, 540 U.S. at 497).

### 1. Plaintiff's Activities

Part of the ALJ's rationale for discounting Plaintiff's subjective symptom testimony was that she found Plaintiff engaged in activities that were inconsistent with his claims of fatigue and declining cognitive function. (Doc. 12-3 at 28). An ALJ can discount a claimant's subjective symptom testimony based on the claimant's daily activities under two theories. *Orn*, 495 F.3d at 639. First, the ALJ can discount the claimant's subjective symptom testimony if the claimant's daily activities contradict the claimant's subjective symptom testimony. *Id.* Second, "the ALJ may discredit a claimant's testimony when the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012). However, "the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability." *Orn*, 495 F.3d at 639 (alteration in original); *see also Audra H. v. Berryhill*, No. CV18-8129-PCT-DGC, 2019 WL 1643748, at *8 (D. Ariz. Apr. 16, 2019) (stating "[p]laintiff's reported daily activities of watching television, talking on the phone, preparing easy meals, struggling to complete housework, and attending doctor appointments" did not establish a clear and convincing reason for discounting the plaintiff's testimony).

Here, the ALJ discounted Plaintiff's subjective symptom testimony relating to fatigue and declining cognitive functioning because she found that Plaintiff "clean[s] around the house, help[s] care for his grandson, drive[s], and do[es] yard work."[6]

---

[6] Although the ALJ noted that Plaintiff installed a porch, (Doc. 12-3 at 28), the ALJ neglected to mention reports that Plaintiff appears to have been injured while doing so. (Doc. 12-12 at 64 (Ex. 10F at 34)). Therefore, this activity is a dubious ground to base a finding of inconsistency on.

- 12 -

(Doc. 12-3 at 28). The ALJ did not adequately establish either ground for finding inconsistency between the daily activities and Plaintiff's subjective symptom testimony. Thus, the ALJ erred.

First, the ALJ's analysis did not explain how any of the cited activities are inconsistent with Plaintiff's subjective symptom testimony. Indeed, it is unclear from the evidence that the ALJ cited if Plaintiff even performed the cited tasks daily, the extent to which he performed them, or the amount of time it took him to complete them. (*Cf.* Doc. 12-3 at 49–50 (detailing Plaintiff's inability to consistently complete household chores)). Given the lack of information regarding Plaintiff's ability to perform daily activities, there is not substantial evidence to support a finding of inconsistency between the cited daily activities and Plaintiff's subjective symptom testimony regarding fatigue and declining cognitive function.

Second, the ALJ did not connect any of the cited activities to any transferable work skill. *Pontzious v. Berryhill*, No. 3:16-CV-8274-HRH, 2017 WL 6276371, at *8 (D. Ariz. Dec. 11, 2017) (stating the ALJ must "explain how the activities to which she cited would be transferable to a work setting"). The ALJ's analysis does not demonstrate that Plaintiff "is able to spend a substantial part of [his] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *See Audra H.*, 2019 WL 1643748, at *8 (quoting *Orn*, 495 F.3d at 639). Simply put, the evidence the ALJ cited does not support a finding, based on substantial evidence, that Plaintiff performs any daily activity that shows a transferable work skill.

In sum, the ALJ did not show any inconsistency between the cited activities and Plaintiff's subjective symptom testimony nor did she show that any cited activity illustrates a transferable work skill. It is the ALJ's duty to adequately develop the record, and the ALJ must explain the path she took to reach the finding she did. *Treichler*, 775 F.3d at 1103. Because the ALJ failed to adequately explain how Plaintiff's daily activities were inconsistent with any specific portion of his subjective symptom testimony, she erred.

### 2. Plaintiff's Medication

The ALJ also appears to have based her decision to discount Plaintiff's testimony regarding his symptoms of fatigue on the fact that Plaintiff "reported that [a medication] was helping control his fatigue." (Doc. 12-3 at 28–29). The fact that a claimant's medication is helping adequately control a condition is relevant to an ALJ's credibility determination because the effectiveness of medication can create a factual conflict with the claimant's testimony. *See Brown-Hunter*, 806 F.3d at 496. The ALJ here cited evidence that Plaintiff's medication "helped [Plaintiff] feel 'not quite as sleepy'" in that Plaintiff "can just rest at times without always falling asleep." (Doc. 12-11 at 18 (Ex. 7F at 6); *see also* Doc. 12-12 at 41 (Ex. 10F at 12) ("Less hypersomnia with tx with [medication.]")). This evidence does not show that Plaintiff's medication helps effectively control his fatigue; it merely illustrates that it somewhat improves his condition—to what extent is unknown. In fact, the ALJ failed to show how this evidence conflicted with any specific testimony. Accordingly, the ALJ erred in citing the effect of Plaintiff's medication as a clear and convincing reason for discounting his testimony because it is unclear what path she took to this conclusion. *Treichler*, 775 F.3d at 1103.

### 3. Selling Business

The ALJ also seemed to rely on the fact that Plaintiff "sold his business due to dropping revenues and health, so health was not the sole reason he stopped working." (12-3 at 29). It is unclear why the ALJ cited this evidence, but it seems as though she was indicating that there was a conflict in testimony. Inconsistency of the testimony can be a ground for discounting a claimant's testimony, but a "vague allegation" of inconsistency is not enough. *See Treichler*, 775 F.3d at 1103 (citation omitted). Instead, the ALJ must "specifically identify the testimony [from a claimant] she or he finds not to be credible and . . . explain what evidence undermines the testimony." *See id.* at 1102 (alterations in original) (citation omitted).

It is not apparent how any evidence relating to why Plaintiff sold his business was in conflict with Plaintiff's testimony. The ALJ merely provided a "vague allegation" of

inconsistency without elaboration. Without a specific citation to inconsistent testimony, the exact reason behind why Plaintiff sold his business is not a clear and convincing reason, supported by substantial evidence, for discounting Plaintiff's testimony.

### c. ALJ's Determination that Plaintiff's Mental Impairments Are Not Severe

Finally, Plaintiff argues that the ALJ erred in her determination that his mental impairments are not severe. (Doc. 15 at 15–17). "An impairment or combination of impairments may be found 'not severe only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work." *Miller v. Colvin*, 174 F. Supp. 3d 1210, 1219 (D. Ariz. 2016) (quoting *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005)). "[A]n ALJ may find that a claimant lacks a medically severe impairment or combination of impairments only when his conclusion is 'clearly established by medical evidence.'" *Young v. Colvin*, No. CV-16-02264-PHX-DGC, 2017 WL 677167, at *2 (D. Ariz. Feb. 21, 2017) (citing *Webb*, 433 F.3d at 687). An ALJ must also consider a claimant's subjective symptoms in determining the severity of a claimant's impairment. *Lyons v. Colvin*, No. CV-14-08048-PCT-JZB, 2015 WL 5693544, at *3 (D. Ariz. Sept. 29, 2015). Because the Court has determined that the ALJ erred in the amount of weight she gave to the opinions of the treating providers and Plaintiff's subjective symptom testimony, the ALJ must review the severity of Plaintiff's mental impairments anew on remand.

## IV. HARMLESS ERROR REVIEW

Since the Court has found that the ALJ erred, it must also determine if any error was not harmless. *Bowers-Crawford v. Acting Comm'r of Soc. Sec. Admin.*, 291 F. Supp. 3d 912, 916 (D. Ariz. 2017). If any error was not harmless such that it was not "inconsequential to the ultimate nondisability determination," the Court must reverse. *See Tommasetti*, 533 F.3d at 1038 (citations omitted).

The ALJ's erroneous discounting of the opinions of Plaintiff's treating providers was not harmless error. The vocational expert indicated that if Plaintiff's impairments were as the treating providers said, Plaintiff would not have been able to perform his "past work

or other work." (Doc. 12-3 at 63–64). Therefore, if the ALJ credited the treating providers' opinions, Plaintiff would have qualified for disability benefits. As such, the ALJ's error was not harmless because the error was not "inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038 (citations omitted).

## V. CREDIT-AS-TRUE

Finally, Plaintiff argues that the Court should apply the credit-as-true rule. (Doc. 15 at 17). However, the ALJ's legal errors dealt with a failure to adequately develop the record. As such, invocation of the credit-as-true rule is inappropriate as the record is not "free from conflicts, ambiguities, or gaps," there are factual issues to resolve, and Plaintiff's entitlement to benefits is not necessarily clear under the applicable law. *Treichler*, 775 F.3d at 1103–04. Instead, "further administrative proceedings would be useful." *See id.* at 1103. The inadequate reasoning behind discounting the testimony of Plaintiffs' treating providers leaves open the question of whether Plaintiff is disabled. Indeed, developing the record by appropriately addressing the weight of Plaintiff's subjective symptom testimony and the weight of the opinions of Plaintiff's treating providers will help determine if Plaintiff is in fact disabled. It is the ALJ's duty to adequately develop the record. *Tonapetyan*, 242 F.3d at 1150. Therefore, application of the credit-as-true rule is not appropriate here, and the Court will remand for a new hearing.

## VI. CONCLUSION

Based on the foregoing,

**IT IS ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** for further proceedings consistent with this Order. The Clerk of Court shall enter judgment accordingly.[7]

Dated this 10th day of December, 2019.

James A. Teilborg
Senior United States District Judge

---

[7] To the extent mandate is required, the judgment shall serve as the mandate.